# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SANA HEALTHCARE CARROLLTON, LLC, d/b/a CARROLTON REGIONAL MEDICAL CENTER, | § § § § | |
| *Plaintiff,* | § | Civil Action No. 4:23-CV-738 |
| v. | § § | Judge Mazzant |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | § § § | |
| *Defendants.* | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Sana Healthcare Carrollton, LLC d/b/a Carrollton Regional Medical Center's Motion to Take Discovery and Compel Privilege Log (Dkt. #28). Having considered the motion and the relevant pleadings, the Court finds that it should be **GRANTED in part**.

## BACKGROUND

### I.    Factual History

### A.  The Hospital

This case arises in the context of whether Defendant Health Resources and Services Administration ("HRSA") properly refused to provide Sana Healthcare Carrollton, LLC (the "Hospital") with a reimbursement for COVID-19 treatment and testing services to uninsured patients (Dkt. #1 ¶¶ 1–5). The Hospital operates a 216-bed acute care hospital in Carrollton, Texas that serves Carrollton, Farmers Branch, Lewisville, the Colony, and other surrounding communities near Dallas, Texas (Dkt. #1 ¶ 10). The Hospital provided care for patients with

COVID-19, conducted COVID-19 testing, and delivered COVID-19 vaccinations to many members of the communities in and surrounding Dallas (Dkt. #1 ¶ 1).

### B.  The Government

HRSA is a United States government agency to which Defendant United States Department of Health and Human Services ("DHHS") delegated authority to administer certain programs relating to COVID legislation, discussed further below. Defendant Xavier Becerra is the United States Secretary of DHHS (Dkt. #1 ¶ 14). Defendant Carole Johnson is the Administrator of HRSA (Dkt. #1 ¶ 16). The Hospital is only suing Becerra and Johnson in their official capacities (Dkt. #1 ¶¶ 14, 16). The Court refers to the Defendants collectively as the "Government."

### C. Framework of the Uninsured Program

To ensure the availability of COVID-19 testing, treatment, and vaccination for the approximately 29 million Americans without health insurance, Congress appropriated funds to reimburse health care providers for providing these services to the uninsured (Dkt. #14 at pp. 3–4). Congress appropriated initial funds through the Families First Coronavirus Response Act. PUB. L 116-127, 134 STAT. 178 (2020). Subsequently, Congress appropriated additional funds through the Coronavirus, Aid, Relief, and Economic Security Act; the Paycheck Protection Program and Health Care Enhancement Act, and the American Rescue Plan Act of 2021. PUB. L. NO. 116-136, 134 STAT. 281 (2020); PUB. L. 116-139, 134 STAT. 620 (2020); PUB. L. 117-2, 135 STAT. 40 (2021). DHHS has delegated the responsibility for processing claims and making payments to healthcare providers to HRSA (Dkt. #14, Exhibit 1 ¶ 3).

This legislation created and funded the COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, and Vaccine Administration for the Uninsured Program (the

"UIP") (Dkt. #14, Exhibit 1 ¶ 3).[1] The UIP provided reimbursement to eligible healthcare providers and facilities for the testing, treatment, and vaccine administration to uninsured individuals (Dkt. #14, Exhibit 1 ¶ 17). HRSA contracted with UnitedHealth Group ("UnitedHealth") to help administer the UIP (Dkt. #14, Exhibit 1 ¶ 18). The UIP existed entirely in an electronic format and required healthcare providers to use two (2) systems, the UIP Portal and the Medicare Electronic Data Interchange ("MEDI") (Dkt. #14, Exhibit 1 ¶ 19). The primary factual disputes in this case relate to the UIP Portal. HRSA has provided various resources to healthcare providers indicating how to use the UIP Portal and MEDI and receive reimbursements under the UIP (*See* Dkt. #14, Exhibits 2–3, 5–14).

### D.  Submitting a Claim Under the Uninsured Program

Although the parties dispute exactly how many steps are required to receive a reimbursement under the UIP, a healthcare provider must clearly complete certain actions to receive a reimbursement (Dkt. #14, Exhibit 1 ¶ 21; Dkt. 16 at p. 8; Dkt. #17 at p. 4 n.2). The most important actions for the purposes of this case were that a healthcare provider must have submitted a patient roster in the UIP Portal and received corresponding temporary patient identification numbers ("temporary IDs") (the healthcare provider would then use the temporary IDs to submit claims for reimbursement using MEDI) (Dkt. #14, Exhibit 1 ¶ 19; Dkt. #14, Exhibit 3 at pp. 18–20, 26; Dkt. #14, Exhibits 4–8; Dkt. #14, Exhibit 9 at p. 16).

To submit a patient roster, a healthcare provider first accessed the UIP Portal (Dkt. 14, Exhibit 1 ¶ 24). The healthcare provider may have submitted the patient information either for individual patients or for multiple patients simultaneously (Dkt. #14, Exhibit 1 ¶ 26). The patient

---

[1] The UIP received funds through the Provider Relief Fund (Dkt. #14 at p. 2).

roster must have occurred in the form of a .csv file and complied with certain technical specifications (Dkt. #14, Exhibit 1 ¶ 26; Dkt. #14, Exhibits 5–7). If the healthcare provider attempted to submit a non-conforming patient roster, an error screen would appear indicating that an error occurred in the submission process (Dkt. #14, Exhibit 6). If the healthcare provider successfully uploaded a patient roster, the UIP Portal immediately provided a reference number indicating that the submission was successful (Dkt. #14, Exhibit 7).

On the day following a healthcare provider's successful upload of a patient roster, the provider would receive an automatically generated email (Dkt. #14, Exhibit 1 ¶ 29). The email confirmed the receipt of the patient roster and identified any patients who already had temporary IDs that had not expired (Dkt. #14, Exhibit 8).

After a healthcare provider successfully uploaded a patient roster into the UIP Portal, UnitedHealth analyzed the patient information to verify eligibility (Dkt. #14, Exhibit 1 ¶ 30). Once UnitedHealth verified each patient's eligibility, it assigned a temporary ID to each of the verified patients (Dkt. #14, Exhibit 1 ¶ 30). The process of receiving temporary IDs typically took one (1) to five (5) days after the successful submission of the patient roster (Dkt. #14, Exhibit 1 ¶ 30). The provider could only submit their claims to MEDI after UnitedHealth generated and assigned the temporary IDs (Dkt. #14, Exhibit 1 ¶ 31).

### E.  Impending Shutdown of the Uninsured Program

However, on March 15, 2022, the White House announced the impending shutdown of the UIP due to a lack of sufficient funding (Dkt. #14, Exhibit 1 ¶ 40). HRSA reiterated the White House's announcement and announced that it would stop accepting testing and treatment claims from providers at 11:59 PM on March 22, 2022 (Dkt. #14, Exhibit 12).

Following the announcement of the UIP's impending shutdown, a "significant increase UIP Portal activity" occurred as healthcare providers sought to submit claims prior to the deadline (Dkt. #17, Exhibit 1 ¶ 10). At that time, UnitedHealth experienced delays in generating temporary IDs for successfully uploaded patient rosters (Dkt. #14, Exhibit 1 ¶ 65). The program manager for the subsidiary of UnitedHealth, OptumServe Technology Services, Inc. ("OptumServe"), that managed the UIP claims that the patient roster upload process was separate and distinct from the temporary ID assignment process (Dkt. #17, Exhibit 1 ¶ 10). The program manager further claims that no such delays or technical issues extended to the patient roster upload process (Dkt. #17, Exhibit 1 ¶ 10). UnitedHealth claims to have no record of a technical issue with the UIP Portal that prevented participant providers from uploading patient rosters on March 17, 2023 (Dkt. #17, Exhibit 1 ¶¶ 12–13). On that day, 6,291 providers successfully uploaded 5,503,928 patient records (within 116,627 batches) (Dkt. #17, Exhibit 1 ¶ 9). The UIP Portal assigned each of these March 17 upload batches a reference number (Dkt. #17, Exhibit 1 ¶ 9).

Despite the alleged differences between the two (2) processes, UnitedHealth sent an email addressed to "Provider" on April 5, 2022, to address concerns regarding technical delays (Dkt. #6, Exhibit 3 at p. 3). The email stated in relevant part:

> We are working with HRSA on multiple scenarios that impacted a provider's ability to submit claims by the urgent program shutdown deadlines. As of right now, the program is not accepting new claim submissions for testing and treatment claims, and currently HRSA is not allowing for any exceptions around the current deadlines. If HRSA allows an exception directly related to the provider's scenarios, we will attempt to contact.

(Dkt. #6, Exhibit 3 at p. 3). The Government claims that UnitedHealth sent this email to all providers who had contacted UnitedHealth with questions related to patient rosters (Dkt. #14, Exhibit 1 ¶ 65). Further, the Government claims that the email was relevant only to providers who

had successfully uploaded patient rosters and for whom there was a delay in generating temporary IDs (Dkt. #14, Exhibit 1 ¶ 65).

**F.  The Hospital's Attempted Patient Roster Upload**

On March 17, 2022, the Hospital claims that it, through its Chief Legal Officer, Radha Savitala ("Savitala"), uploaded a conforming patient roster (consisting of 285 patients) to the UIP Portal (Dkt. #6, Exhibit 2 ¶ 4). However, the Hospital claims that it never received temporary IDs before the claim submission deadline passed (Dkt. #6, Exhibit 2 ¶ 6). The Hospital characterizes the April 5, 2022 UnitedHealth email as confirming that the Hospital had uploaded the patient roster on March 17, 2022 (Dkt. #6 at p. 8). The Hospital claims that the "[UIP] portal malfunctioned and resulted in the failure to generate" temporary IDs (Dkt. #6 at p. 12).

Savitala claims that she called UnitedHealth's support line on March 22, 2022, to complain that it had not assigned temporary IDs (Dkt. #6, Exhibit 2 ¶ 7). She claims that "[UnitedHealth] stated that the system was 'overwhelmed' by the number of claims being submitted, but indicated that that they did see [the Hospital's] March 17, 2022 submission on their end in the system" (Dkt. #6, Exhibit 2 ¶ 7). The Hospital claims that it made daily calls and outreach in the days after its submission (Dkt. #16 at p. 9). However, the Government disputes this claim and states that the first time the Hospital reached out regarding its issue was on March 23, 2022 (Dkt. #14 at p. 12 n.5) (citing Dkt. #14, Exhibit 21). The Government claims that no record exists of the help center agent confirming that the alleged patient roster submission was visible (Dkt. #14 at p. 12). Instead, the Government claims that the help center agent could not find the patient roster and a sample name that the Hospital had provided (Dkt. #14 at p. 12; Dkt. #14, Exhibit 21). UnitedHealth

created a claim ticket #D1237 following one (1) of these two (2) alleged calls (Dkt. #6, Exhibit 2 ¶ 7; Dkt. #14, Exhibit 1 ¶ 68).

In contrast, the Government claims that the Hospital never submitted a patient roster on March 17, 2022 (Dkt. #14 at p. 20). Before this instance, the Hospital had successfully uploaded 24 separate batches of patient information over an approximately two (2)-year timespan (Dkt. #14, Exhibit 1 ¶¶ 45, 59). However, the Government does not have any record indicating that the Hospital submitted a patient roster on March 17, 2022 (Dkt. #17, Exhibit 1 ¶ 13). The Hospital's last patient roster upload into the UIP Portal, according to UnitedHealth's records, occurred on February 22, 2022 (Dkt. #17, Exhibit 1 ¶ 7). A record exists that a Hospital representative logged into the UIP Portal on March 17, 2022 (Dkt. #17, Exhibit 1 ¶ 5). No record of a reference number corresponding to a patient roster upload for the Hospital exists after February 22, 2022 (Dkt. #17, Exhibit 1 ¶¶ 6–7).

The Hospital and HRSA exchanged subsequent correspondence after March 2022 (Dkt. #6, Exhibits 4–5; Dkt. #14, Exhibits 15–20). However, the parties were not able to resolve this dispute in those communications (Dkt. #6, Exhibits 4–5; Dkt. #14, Exhibits 15–20).

## II.    Procedural History

The Hospital brought suit against the Government for declaratory and injunctive relief, claiming that the Government's actions were arbitrary, capricious, and exceeded statutory authority under the Administrative Procedure Act (the "APA") (Dkt. #1 ¶¶ 63–81).

On August 16, 2023, the Hospital filed the present motion requesting that the Court issue a preliminary injunction requiring the Government to "set aside, obligate, or deposit into the Court's Registry sufficient funds to reimburse $6,419,414 in gross charges from remaining

[Provider Relief Fund] funds, or funds recouped from [Provider Relief Fund] overpayments to providers" (Dkt. #6 at p. 16). The Court denied the Hospital's motion for preliminary injunctive relief (Dkt. #20).

On February 27, 2024, the Government produced a certified administrative record consisting of "the information that was considered in connection with the [Government's] determination . . . that [the Hospital] did not submit a patient roster on March 17, 2022" (Dkt. #31, Exhibit 1 at p. 2). However, the Government did not produce a privilege log in connection with the administrative record (Dkt. #28 at p. 5).

On April 10, 2024, the Hospital filed the present motion (Dkt. #28). The Hospital believes the administrative record is incomplete and seeks to take extra-record discovery from OptumServe regarding technical issues with the UIP Portal (Dkt. #28 at pp. 1–2).[2] On April 24, 2024, the Government filed its response (Dkt. #31). If the Court grants the Hospital's motion, the Government requests "leave to propound deposition notices and requests upon the Hospital and [Savitala]" (Dkt. #31 at pp. 17–18). On May 1, 2024, the Hospital filed its reply (Dkt. #33). On May 8, 2024, the Government filed its sur-reply (Dkt. #34).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . " FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The Local Rules of the Eastern District of Texas provide

---

[2] The Hospital has already served *subpoenas duces totem* on OptumServe and Avro Deb, an employee of OptumServe (Dkt. #31, Exhibit 2; Dkt. #31, Exhibit 3). These subpoenas provide notices of deposition and requests for the production of various materials (Dkt. #31, Exhibit 2; Dkt. #31, Exhibit 3).

that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense . . . " LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are discoverable. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

## ANALYSIS

Three (3) issues lie before the Court. First, the Hospital requests that the Court allow the Court to take extra-record discovery via subpoenas to OptumServe and Avro Deb, the individual responsible for overseeing the UIP Portal for OptumServe (Dkt. #28, Exhibit 5). Second, the Hospital requests the Court to order the Health Resources and Services Administration and the United States Department of Health and Human Services to provide privilege log accounting for all documents withheld form the administrative record on account of privilege requests (Dkt. #28, Exhibit 5). Third, the Government requests that the Court grant it leave to propound deposition notices and requests upon the Hospital and Savitala (Dkt. #31 at pp. 17–18). The Court addresses each issue in turn.

## I.      Extra-Record Discovery

Regarding extra-record discovery (beyond the administrative record), two (2) questions lie before the Court. First, the Court determines whether it should allow the Hospital to conduct extra-record discovery at all. Second, the Court addresses additional considerations about the extra-record discovery. Third, the Court considers whether the Hospital's document requests to OptumServe are inappropriate because of the Government's alleged control over the materials at issue.

### A.  Whether the Court Should Allow Extra-Record Discovery

The Court will allow the Hospital to conduct limited extra-record discovery via modified versions of Topic #5 and #8 in Schedule B to the Hospital's subpoena to OptumServe. This extra-record discovery will likely provide background information to assist the Court in its determination

of the Government considered all of the relevant factors in its decision to not reimburse the Hospital under the UIP.

The Hospital argues that the Court should allow extra-record discovery to provide the Court with background information in order to determine whether the Government considered all of the relevant factors (Dkt. #33 at pp. 3–7). Recognizing that extra-record discovery is not the norm in APA cases, the Hospital claims the undiscovered information would reveal whether the Government considered whether "the broken [UIP Portal] prevented the Hospital from submitting a patient roster on March 17, 2022" (Dkt. #33 at p. 4). Further, the Hospital asserts that the current administrative record contains "no information about known and admitted problems with the UIP Portal that prevented provider submissions" (Dkt. #33 at pp. 5–6). According to the Hospital, the administrative record is silent on this issue despite the Government's alleged admission that the UIP Portal experienced multiple technical issues (Dkt. #33 at pp. 5–6).

The Government claims that extra-record discovery is not appropriate in this case because the Court should review the existing administrative record, rather than a "new record" made in the reviewing court (Dkt. #31 at pp. 8–11). The Government argues that no exception to this general rule applies in this case (Dkt. #31 at pp. 9–11). Rather, the Government claims that the existing administrative record shows that the Hospital did not upload a patient roster on March 17, 2022 despite thousands of other providers uploading more than 116,000 patient rosters on the same day (Dkt. #31 at p. 10). The Government argues that the information in the existing administrative record is sufficient and no supplemental background information is needed (Dkt. #31 at p. 10).

The APA provides that "the Court shall review the whole record or those parts of it cited by the party," and makes no provision for extra-record review. 5 U.S.C. §§ 701–706. Accordingly, judicial review of an APA claim is generally limited to the administrative record underlying the challenged decision. *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Geyen v. Marsh*, 775 F.2d 1303, 1309 (5th Cir. 1985). The administrative record includes "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Exxon Corp. v. Dept. of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88 (1951)).

Nevertheless, a party may seek to supplement the administrative record with documents or testimony. *See Knight v. U.S. Army Corps of Eng'rs*, No. 4:18–CV–352, 2019 WL 3413423, at *1 (E.D. Tex. July 29, 2019). The United States Court of Appeals for the Fifth Circuit allows a reviewing court to consider extra-record materials in an APA case under three (3) narrow circumstances:

> (1) The agency deliberately or negligently excluded documents that may have been adverse to its decision;
>
> (2) The district court needed to supplement the record with "background information" in order to determine whether the agency considered all of the relevant factors, or;
>
> (3) The agency failed to explain administrative action so as to frustrate judicial review.

*Medina Cty. Envt'l Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (citing *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). "The [Hospital] must make the requisite strong or substantial probabilistic showing that discovery is sufficiently likely to unearth evidence relevant to deciding whether the record should be supplemented or added to

through one of the previously stated extra-record exceptions." *Aderholdt v. Bureau of Land Mgmt.*, No. 7:15-cv-00162, 2017 WL 11698630, at *3 (N.D. Tex. May 1, 2017) (cleaned up) (internal citations omitted); *see also City of Dall. v. Hall*, Nos. 3:07-CV-060P, 3:07-CV-0213, 2007 WL 3257188, at *14 (N.D. Tex. Oct. 29, 2007) ("The party [seeking extra-record discovery] must provide the court with reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record or the party must make a significant showing that it will find material in the agency's possession indicative of bad faith or an incomplete record.") (internal citations omitted).

The Court will allow the Hospital to conduct limited extra-record discovery to locate background information to assist the Court's determination of whether the Government considered all of the relevant factors in its decision to not reimburse the Hospital under the UIP. The Hospital received an email from HRSA stating that its support service was "working with HRSA on multiple scenarios that impacted a provider's ability to submit claims by the urgent program shutdown deadlines" (Dkt. #6, Exhibit 3 at p. 3). The Hospital claims that the administrative record contains no information about known and admitted problems with the UIP Portal that prevented provider submissions in the relevant time period (Dkt. #33 at pp. 4–5). The Government does not rebut this claim, particularly regarding providers' ability to submit patient rosters due to technical issues with the UIP Portal.[3] Based on the existence of this email, the

---

[3] On September 7, 2023, the Government produced a declaration by Alexandra Huttinger, the Deputy Associate Administrator for a Bureau within HRSA (Dkt. #14, Exhibit 1). Within this declaration, Huttinger states that technical delays only impacted the generation and assignment of temporary patient IDs for submitted patient rosters (rather than provider's ability to upload patient rosters) (Dkt. #14, Exhibit 1 § 66). Further, she claims that no providers, other than the Hospital, reported technical issues uploading patient rosters (Dkt. #14, Exhibit 1 § 66). It is unclear to the Court whether this declaration is part of the administrative record. Regardless, additional limited discovery will likely provide background information to assist the Court's determination of whether the Government considered all of the relevant factors. This limited discovery will relate to technical issues involving healthcare providers' ability to submit patient rosters to the UIP Portal between Mar15ch 15, 2022 and March 22, 2022.

Hospital has made a substantial showing that extra-record discovery is likely to unearth evidence relevant to deciding whether the administrative record should be supplemented with background information in order to determine whether the Government considered all of the relevant factors. *See Aderholdt*, 2017 WL 11698630, at *3. Such additional background information regarding whether the Government considered in its decision any technical issues that prevented provider submissions of patient rosters would enable the Court to determine whether the Government considered all relevant factors.

"Whether an agency considered all relevant factors 'can sometimes only be determined by looking outside the record to see what the agency may have ignored.'" *Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23–CV–007, 2023 WL 2842760, at *3 (S.D. Tex. Apr. 7, 2023) (quoting *City of Dall.*, 2007 WL 3257188, at *4). "A primary source for 'unconsidered' factors is necessarily outside the administrative record." *Id.* "It may well be that the evidence . . . will not show any factors were ignored, but the evidence itself is required to make that determination." *Id.* Therefore, the Court will permit the Hospital to take limited extra-record discovery on its claim.

However, the Court will limit the extra-record discovery that the Hospital may take to modified versions of Topic #5 and #8 in Schedule B to the Hospital's subpoena to OptumServe. As the Hospital recognizes, the issue before the Court is whether "the [Government] considered whether [technical issues with the UIP Portal] prevent the Hospital from submitting a patient roster on March 17, 2022" (Dkt. #33 at p. 4). The Hospital has not shown how technical issues with the UIP Portal not impacting healthcare providers' ability to submit patient rosters to the UIP Portal are relevant to this case. The Hospital's current discovery requests greatly exceed the scope of the background information the Court needs to determine whether the Government considered

all of the relevant factors. Therefore, the Court will limit the Hospital's extra-record discovery to inquiries about technical issues with the UIP Portal specifically impacting healthcare providers' ability to submit patent rosters. The following modified versions of Topics #5 and #8 in Schedule B in the Hospital's subpoena to OptumServe accomplish this goal:

> Topic #5: Telephone calls from healthcare providers between March 17, 2022 and March 22, 2022 regarding healthcare providers experiencing technical issues submitting patient rosters to the UIP Portal.

> Topic #8: Telephone calls from healthcare providers between March 17, 2022 and March 22, 2022 concerning any technical issues with the UIP Portal impacting healthcare providers' ability to submit patient rosters.

The Hospital has made a substantial showing that extra-record discovery would likely unearth evidence relevant to deciding whether the administrative record should be supplemented with background information in order to determine whether the Government considered all of the relevant factors in its decision to not reimburse the Hospital under the UIP. Therefore, the Court will allow the Hospital to conduct limited extra-record discovery.

### B. Additional Considerations Regarding Extra-Record Discovery

The Court must consider three (3) additional issues regarding extra-record discovery. First, the Court considers whether the extra-record discovery it will allow is duplicative of the existing administrative record. Second, the Court considers whether the subpoenas place an undue burden on OptumServe from the perspective of compliance cost. Third, the Court considers whether a protective order is necessary for OptumServe to fully comply with the Hospital's discovery requests.

### 1. Duplicative Discovery Requests

The Government argues that substantial portions of the Hospital's subpoenas are duplicative of materials already in the administrative record (Dkt. #31 at pp. 3, 12–13). The Court has already limited the Hospital's discovery requests to two (2) document requests about technical issues impacting healthcare providers' ability to submit patient rosters. *See Supra* Section I.A. The Government does not claim that materials detailing the presence or lack of technical issues impacting healthcare providers' ability to submit patient rosters exist in the administrative record.[4] Therefore, the Court finds that the remaining portions of the Hospital's subpoenas are not duplicative of the existing administrative records.

### 2. Mandatory Cost-Shifting

The Court must employ cost-shifting because OptumServe will experience significant compliance costs due to the Hospital's subpoena.

The Government claims OptumServe would experience an undue burden and expense to comply to comply with the Hospital's subpoenas (Dkt. #31 at pp. 3, 7). To comply with the Hospital's request (prior to the Court's modifications), counsel for OptumServe claims that OptumServe would need to manually review tens of thousands telephone calls, which would take thousands of hours (Dkt. #31, Exhibit 6 at p. 3).[5] These telephone calls were from healthcare providers from March 15, 2022 through March 22, 2022 related to the UIP Portal on (Dkt. #31, Exhibit 6 at p. 3). Counsel for OptumServe further claims that "[w]ithout substantial limitations

---

[4] The administrative record contains a spreadsheet documenting approximately 116,628 successful patient roster uploads by thousands of healthcare providers on March 17, 2022 (Dkt. #31 at pp. 3, 12). However, this information does not reveal whether any healthcare providers experienced difficulties uploading patient rosters due to technical issues with the UIP Portal.

[5] Over 49,000 telephone calls occurred between March 15, 2022 and March 22, 2022 (Dkt. #31, Exhibit 6 at p. 3). The number of telephone calls that OptumServe would need to review would be less, but still a very large number in the date range from March 17, 2022 and March 22, 2022.

on the type of records sought by [the Hospital], it is not possible for OptumServe to comply with the subpoenas" (Dkt. #31, Exhibit 6 at p. 3). The Hospital did not respond regarding this issue.

OptumServe and Avro Deb filed objections to the Hospital's subpoenas (Dkt. #31, Exhibit 6 at pp. 17–23). OptumServe objected in part that "compliance with the subpoena would subject OptumServe—a third party—to undue burden and expense" (Dkt. #31, Exhibit 6 at p. 18). Additionally, OptumServe objected on the grounds that the subpoena was overly broad, unduly burdensome, and fails to provide OptumServe reimbursement for the "substantial time and expense . . . that would be incurred in responding to the subpoena" (Dkt. #31, Exhibit 6 at pp. 18–19). Further, OptumServe objects to document requests 5 and 8 (among others) "as overly broad, unduly burdensome, and seeking confidential and proprietary information . . . without any reference to a protective order or other protection for the information. Specifically, the requests improperly, and without adequate safeguards, seek documents related to other healthcare providers, including information that those providers submitted to OptumServe" (Dkt. #31, Exhibit 6 at pp. 19–20).

The Court has already limited the scope of the Hospital's discovery requests by retaining only two (2) document requests and limiting these two (2) requests to telephone calls from healthcare providers on the topic of technical difficulties submitting patient rosters. The Court will not further reduce the scope of these two (2) remaining document requests.

The Court will require the Hospital to reimburse OptumServe for its reasonable expenses to comply with the Hospital's subpoena (as modified by the Court) because OptumServe's costs of complying with the subpoena are significant. Federal Rule of Civil Procedure 45(d)(2)(B)(ii) requires that when the Court orders the nonparty to comply with a subpoena despite timely

objections, "the order must protect" the nonparty "from significant expense resulting from compliance." FED. R. CIV. P. 45(d)(2)(B)(ii). In the Fifth Circuit, this rule "requires a district court to shift a nonparty's cost of complying with a subpoena if those costs are significant." *Leonard v. Martin*, 38 F.4th 481, 490 n.8 (5th Cir. 2022). The cost of complying with a subpoena may be significant at values as low as $20,000 or $9,000. *See id.* (citing *Legal Voice v Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) & *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)). OptumServe's costs of complying are clearly significant because it will have to review tens of thousands of telephone calls over the span of thousands of hours (Dkt. #31, Exhibit 6 at p. 3).[6] Therefore, cost-shifting is mandatory. *Leonard*, 38 F.4th at 490 n.8.

### 3. Protective Order

The Court will not at this time require the parties to submit a proposed protective order to protect OptumServe's confidential or proprietary information.

OptumServe objected to the Hospital's subpoena on the grounds that it seeks confidential and proprietary information without reference to a protective order (or other protection) (Dkt. #31, Exhibit 6 at pp. 19–20). Absent a form of protection, OptumServe claims that it "will be materially limited in the documents it can produce in response to those topics" (Dkt. #31, Exhibit 6 at p. 20). OptumServe's counsel claims the subpoena "implicates protected health and other confidential commercial data involving millions of patients and thousands of [healthcare] providers across the country" (Dkt. #31, Exhibit 6 at p. 3). The Hospital does not respond to these objections.

---

[6] OptumServe timely served its objections on the Hospital fourteen (14) days after the Hospital served the subpoena on OptumServe. FED. R. CIV. P. 45(d)(2)(B). The Hospital served the subpoena on OptumServe on March 5, 2024 (Dkt. #31, Exhibit 6 at p. 5). OptumServe served its objections on the Hospital on March 19, 2024 (Dkt. #31, Exhibit 6 at p. 21).

A district court must modify or quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception of waiver applies." The Court has already significantly limited the Hospital's discovery requests. The Court does not find a protective order to be necessary because the Hospital's extra-record discovery is limited to telephone calls between OptumServe personnel and healthcare providers about technical difficulties submitting patient rosters (as opposed to information containing the contents of the patient rosters) between March 17, 2022 to March 22, 2022. *See supra* Section I.A. If OptumServe later determines that a protective order is necessary, it may file a motion for a protective order.

The Court finds that a protective order is not needed at this time. However, the Court will require the Hospital to reimburse OptumServe for its reasonable expenses to comply with the Hospital's two (2) remaining document requests because OptumServe's costs of compliance are significant.

### C. HRSA's Alleged Control of the Materials at Issue

The Hospital's two (2) remaining document requests to OptumServe are not inappropriate because HRSA does not control the materials at issue.

The Government claims that all requests for documents within the Hospital's subpoenas to OptumServe are improper because all of the documents at issue are under HRSA's control pursuant to HRSA's contract with OptumServe (Dkt. #31 at p. 13). Therefore, the Government claims that the Hospital should have directed its request for documents to HRSA (Dkt. #31 at p. 31). The Hospital does not respond to this argument.

HRSA's contract with OptumServe clarifies that the United States government has the sole legal right to control "Uninsured Provider Submission Data":

> With respect to any legal process from third-parties (including, but not limited to, subpoenas or discovery requests) seeking disclosure of the Uninsured Provider Submission Data, [OptumServe] will oppose such legal process seeking discovery on the ground that the U.S. government is the real party in interest and has the sole legal right to possess, control, release, disclose, or utilize such data.

(Dkt. #30, Exhibit 5 at p. 89). HRSA's contract with OptumServe also defines "Uninsured Provider Submission Data":

> [D]ata related to testing, treatment or vaccination services rendered by providers to patients that is submitted to [OptumServe] in order to receive payment of uninsured claims.

(Dkt. #30, Exhibit 5 at p. 89). "[Federal Rule of Civil Procedure] 45 subpoenas are not meant to circumvent the regular discovery process under [Federal Rules of Civil Procedure] 34 and 26." *United States v. Cabelka*, No. 7:16–CV–00126, 2017 WL 11814622, at *2 (N.D. Tex. Oct. 5, 2017) (citing *Ntakirutimana v. CHS/Cmty. Health Sys., Inc.*, No. L–09–114, 2011 WL 13135608, at *2 (S.D. Tex. June 29, 2011)). "'[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to [Federal Rule of Civil Procedure] 34 rather than subpoenaing them' pursuant to [Federal Rule of Civil Procedure] 45." *Thomas v. EIM, Inc.*, No. 06-886-B-M2, 2008 WL 695230, at *2 (M.D. La. Mar. 12, 2008) (quoting *Burns v. Bank of Am.*, No. 03 Civ. 1685, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007)). Under Federal Rule of Civil Procedure 34, "[a] party may serve on any other party a request . . . to produce . . . items in the responding party's *possession, custody, or control*." FED. R. CIV. P. 34(a)(1) (emphasis added).

Assuming that HRSA has "control" of Uninsured Provider Submission Data for the purposes of Federal Rules of Civil Procedure 34 and 45, none of the materials subject to limited extra-record discovery are Uninsured Provider Submission Data and available from HRSA. The only extra-record discovery the Court is allowing is for telephone calls between OptumServe

personnel and healthcare providers about technical difficulties submitting patient rosters between March 17, 2022 to March 22, 2022. *See Supra* Section I.A. No evidence before the Court suggests that telephone calls about technical difficulties submitting patient rosters contain data related to testing, treatment or vaccination services rendered by healthcare providers to patients that is submitted to OptumServe. Thus, the telephone calls at issue do not contain Uninsured Provider Submission Data (*See* Dkt. #30, Exhibit 5 at p. 89). The telephone calls at issue are not subject to HRSA's possession, custody, or control and a subpoena pursuant to Federal Rule of Civil Procedure 45 to OptumServe is appropriate (*See* Dkt. #30, Exhibit 5 at p. 89).

## II.      Production of a Privilege Log

The Court will require the Government to either produce a privilege log for materials it withheld from the administrative record on the basis of privilege or to provide a sworn statement that it did not withhold any materials from the administrative record on the basis of privilege.

The parties dispute whether the Government withheld documents from the administrative record on the basis of privilege (Dkt. #28 at pp. 12–14; Dkt. #31 at pp. 13–17; Dkt. #33 at pp. 7–8; Dkt. #34 at pp. 3–4). A miscommunication between the parties likely occurred on this issue.

An administrative record is not complete if an agency does not provide a privilege log describing all materials that the agency directly or indirectly considered but withheld on the basis of privilege. *Exxon Mobile Corp. v. Mnuchin*, No. 3:17–CV–1930, 2018 WL 4103724, at *2 (N.D. Tex. Aug. 29, 2018). "But the scope of the privilege [does not] define the scope of the material directly or indirectly considered." *Id.* (internal citations omitted). "If a privilege applies, the proper strategy [is not] pretending the protected material [was not] considered, but withholding or redacting the protected material and then logging the privilege." *Id.* (internal citations omitted).

If the Government has directly or indirectly considered materials but withheld these materials from the administrative record on the basis of privilege, then the Government must provide a privilege log describing said materials. *Exxon Mobile Corp.*, 2018 WL 4103724, at *2. However, if the Government has not withheld any materials that it directly or indirectly considered from the administrative record on the basis of privilege, then the Court will require the Government to provide a sworn statement explaining that no materials have been withheld from the administrative record on the basis of privilege. *See Knight*, 2019 WL 3413423, at *3.

## III.   The Government's Requested Discovery

The Court will deny the Government's request for leave to propound deposition notices and document requests to the Hospital and Savitala.

If the Court allows the Hospital to conduct extra-record discovery, the Government asks that the Court also grant it leave to "propound deposition notices and document requests upon the [Hospital] and [Savitala]" (Dkt. #31 at p. 17). According to the Government:

> Parity and fairness auger in favor of allowing Defendants the opportunity to depose Ms. Savitala under oath to probe the veracity and credibility of her story, and to seek documents from the Plaintiff regarding the use and operation of the Plaintiff's data systems and networks on and around March 17, 2022, and its internal communications, including text messages, regarding the alleged March 17 upload to the UIP Portal.

(Dkt. #31 at pp. 17–18). In response, the Hospital argues that the Government's request lacks any legal support (Dkt. #33 at pp. 8–9). The Hospital claims that "[t]here is no legal basis or reason to permit [the Hospital] to discover facts after they already made the decision being challenged in this litigation" (Dkt. #33 at p. 8). According to the Hospital, "[t]his action is about the Hospital's challenge to [the Governments] decision below under the APA and will be decided on the records

considered and/or available to, but ignored by, [the Government] at the time the decision was made" (Dkt. #33 at p. 8).

The Court finds no basis for the Government's requested discovery. As previously mentioned, judicial review of an APA claim is generally limited to the administrative record underlying the challenged decision. *Camp*, 411 U.S. at 142; *Geyen*, 775 F.2d at 1309. A party may supplement the administrative record or conduct extra-record discovery under limited circumstances. *Medina Cty. Envt'l Action Ass'n*, 602 F.3d at 706; *Aderholdt*, 2017 WL 11698630, at *3. The Government's explanation of "[p]arity and fairness" is insufficient to justify supplementation of the administrative record or extra-record discovery (Dkt. #31 at pp. 17–18). Therefore, the Court denies the Government's request for leave to propound deposition notices and document requests to the Hospital and [Savitala].

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Sana Healthcare Carrollton, LLC d/b/a Carrollton Regional Medical Center's Motion to Take Discovery and Compel Privilege Log (Dkt. #28) is hereby **GRANTED in part**. Sana Healthcare Carrollton, LLC may conduct limited extra-record discovery only with following modified versions of Topic #5 and #8 in Schedule B to Sana Healthcare Carrollton, LLC's subpoena to OptumServe Technology Services, Inc.:

> Topic #5: Telephone calls from healthcare providers between March 17 and March 22, 2022 regarding healthcare providers experiencing technical issues submitting patient rosters to the UIP Portal.

> Topic #8: Telephone calls from healthcare providers between March 17 and March 22, 2022 concerning any technical issues with the UIP Portal impacting healthcare providers' ability to submit patient rosters.

It is further **ORDERED** that Sana Healthcare Carrollton, LLC shall reimburse OptumServe Technology Services, Inc. for its reasonable expenses incurred in complying with Sana Healthcare Carrollton, LLC's limited extra-record discovery requests.

It is further **ORDERED** that Defendants Department of Health and Human Services and Health Resources and Services Administration shall provide a privilege log detailing all materials, if any, that they directly or indirectly considered but withheld from the administrative record on the basis of privilege within fourteen (14) days following the issuance of this Order. However, if Department of Health and Human Services and Health Resources and Services Administration did not withhold any such materials from the administrative record on the basis of privilege, then they shall instead provide to Sana Healthcare Carrollton, LLC a sworn statement that they did not withhold any materials from the administrative record on the basis of privilege within fourteen (14) days following the issuance of this Order.

**IT IS SO ORDERED.**

**SIGNED this 28th day of May, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE